**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WESTLEY RETZLER, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER M. MARRONE, et al., | : | No. 08-5191 |
| Defendants. | : | |

<u>MEMORANDUM</u>

**Schiller, J.**                                                                                   **August 5, 2009**

Plaintiff Westley Retzler has recently filed a multitude of Complaints in this District.  In each case, Retzler is proceeding pro se and has been granted *in forma pauperis* (IFP) status.  Retzler's handwritten Complaints name a myriad of individuals and entities, with many Defendants being named in multiple lawsuits.  The Complaints are best described as a hodgepodge of alleged wrongs perpetrated against him (and his sometimes co-Plaintiff Laura Warden) by private citizens, public officials, and the government of Bucks County.

The above-captioned case centers around an attorney Retzler hired to defend him in a criminal action.  Retzler claims his attorney failed to properly represent him and that the district attorney handling the matter reneged on a deal she reached with Retzler's lawyer.  Retzler also alleges that certain Defendants failed to properly investigate the charges brought against him. Following a Court Order, Retzler filed an Amended Complaint.  Three motions to dismiss are currently before this Court.  For the reasons below, the motions are granted.

## I.     BACKGROUND

In August of 2006, Retzler first met with attorney Christopher Marrone regarding charges the Bucks County District Attorney had brought against Retzler for the theft of over $20,000 from

the estate of Retzler's grandmother, of which Retzler was the executor. (Am. Compl. ¶ 1.)  At the

meeting, Marrone informed the pair that he would need to obtain and review documents.  (*Id.* ¶ 3.)

Retzler paid a $5000 retainer to Marrone and signed a legal services agreement. (*Id.*) Marrone later

wrote to Retzler and promised to notify him as soon as the court set a hearing date. (*Id.* ¶ 5.)  On or

about September 25, 2006, Marrone phoned Retzler to inform him that Retzler's trial had been

continued; shortly thereafter, Retzler received a notice that he had an October 23, 2006 court date.

(*Id.* ¶¶ 6-7.)  Retzler and Warden met with Marrone on October 13, 2006 and gave him an additional

$2500, though they did not discuss the case during the meeting.  (*Id.* ¶¶ 8-10.)  Marrone told Retzler

that he had spoken with Bucks County District Attorney Monica Furber and that they had reached

an agreement to dismiss three of the four charges against Retzler and to reduce the remaining charge,

to which Retzler would plead guilty to a misdemeanor, for which Retzler would pay restitution.  (*Id.*

¶ 11.)

        When Retzler showed up for court, he was shocked to find that all of the charges stood "as

originally filed even though all restitution was paid prior to the trial" and that Marrone stood there

and took no action.  (*Id.* ¶ 12.)  Retzler claims that Furber reneged on her word, violating the plea

agreement, and that Marrone sold him out.  (*Id.* ¶¶ 13-14.)  During an October 30, 2006 hearing/trial,

Furber gave Marrone a cashier's check for over $13,000 and Marrone in turn gave the check to

Retzler and told him to make it payable in three separate checks of different amounts.[1]  (*Id.* ¶ 20.)

        On December 28, 2006, Retzler received a check for $1,617.21 from the Bucks County Clerk

of Courts.  (*Id.* ¶ 21.)  Retzler contacted Marrone to ensure that no mistake had been made and

---

[1]Retzler included docket entries with his Amended Complaint.  Those entries show that
his trial was continued on October 23, 2006 and was listed as "Scheduled" for October 30, 2006.

Marrone assured Retzler that he could keep the check.  (*Id.* ¶ 22.)  In fact, despite Marrone's reassurances, Retzler has learned that he owes restitution.  (*Id.* ¶ 26.)  According to documents submitted by Retzler, the check for $1,617.21 "was distributed in error to the defendant" and was "added as restitution" against Retzler.  Although a court appearance was scheduled to modify Retzler's sentence, Retzler has not had face-to-face contact with Marrone since November of 2006 and has had no contact with Marrone since January of 2007.  (*Id.* ¶ 23.)

Retzler also asserts that neither Marrone nor Furber notified him of a Civil Judgement entered against him on July 25, 2007.  (Am. Compl. ¶ 25.)  A collection agency has contacted Retzler in an attempt to collect on this Civil Judgment.  (*Id.* ¶ 27.)

Retzler claims that the Falls Township Police, specifically Martial Belinsky, investigated the theft charges against Retzler.  (*Id.* ¶ 17.)  Belinsky was allegedly out to get Retzler because Retzler previously had been acquitted of an attempt to lure a child with a motor vehicle charge that Belinsky had filed against Retzler.  (*Id.*)  Belinsky failed to question Retzler before theft charges were filed. (*Id.* ¶ 19.)

Retzler "seeks the One Thousand Six Hundred and Seventeen Dollars and any other extra fees the Order of Modified Restitution imposed and the collection agency fees." (Compl. ¶ 29.)  He also seeks damages for Marrone's misrepresentations and deception, as well as the acts of Belinsky and Furber.  (*Id.* ¶ 30.)

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.

*See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001).   A court should read the allegations in the light most favorable to the plaintiff and determine whether a reasonable reading indicates that relief may be warranted.  *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Because Retzler is acting pro se, this Court must construe his Complaint liberally and apply the applicable law, even if Retzler failed to mention it by name.  *See Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2007).  Simply reciting the elements will not suffice.  *Id*. at 231.

Because Retzler is proceeding *in forma pauperis*, 28 U.S.C. § 1915 applies.  Under that statute, a court shall dismiss an action if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B) (2008).  The frivolousness prong of the statute permits judges to examine the factual allegations of the complaint and dismiss claims whose factual contentions are clearly baseless.  *Guarrasi v. Gibbons*, Civ. A. No. 07-5475, 2008 WL 4601903, at *4 (E.D. Pa. Oct. 15, 2008) (quoting *Neitzke*

4

*v. Williams*, 490 U.S. 319, 327 (1989)).

## III.   DISCUSSION

### A.   Claims Against Bucks County District Attorney

In *Reitz v. County of Bucks*, the Third Circuit held the Bucks County District Attorney's office is not an entity that can be sued under § 1983.  125 F.3d 139, 148 (3d Cir. 1997).  Thus, Plaintiffs' claims against the Bucks Country District Attorney's Office are dismissed.

### B.   Claims Against Furber

Retzler alleges that District Attorney Monica Furber "had apparently decided to go back on her word and ignore the agreement for the guilty plea."  (Am. Compl. ¶ 13.)  These are serious allegations for which Retzler presents only bald assertions.  Retzler fails to explain how Furber somehow tricked Retzler into entering a guilty plea, instead electing to generally fault his attorney and Furber for his predicament.

Furber's actions are protected by prosecutorial immunity.  The Supreme Court has held that state prosecutors are immune from civil suits seeking damages under § 1983 for acts committed in initiating and presenting the State's case.  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  In *Imbler*, the Court afforded broad immunity to state prosecutors. *Id*. at 424.  Even the mere threat of lawsuits seeking civil damages, in the Court's declared, would undermine the performance and effectiveness of state prosecutors.  *Id*.  First, if every action taken in furtherance of a prosecutor's duties left open the possibility of a lawsuit, that prosecutor could not focus on the enforcement of the criminal law. *Id*. at 425.  Second, forcing prosecutors, who often operate under time constraints and with limited information, to answer for long-past actions that arose amid numerous indictments and trials would

place an intolerable burden upon them. *Id*. at 425-26.   Thus, the Supreme Court was simply unwilling to limit the discretion afforded to prosecutors in conducting a trial and presenting evidence. *Id*. at 426.

The law is thus clear that, provided Furber was acting within the scope of her duties as a prosecutor, she is immune from liability. *See id*. at 430.  Furber's actions – working out a guilty plea and representing the Commonwealth during a guilty plea hearing – are essential duties tasked to prosecutors.  Retzler recognizes that Furber was acting in her capacity as a prosecutor when he states, "it is admitted that claims against Ms. Furber derive from her conduct in prosecuting and representing the Commonwealth of Pennsylvania in the Bucks County Court of Common Pleas." (Pl.'s Resp. to Mot. to Dismiss of Furber and Bucks County District Attorney at 3.)  Thus, Furber is entitled to immunity and the claims against her are dismissed.

### C.      Claims Against Falls Township Police and Belinsky

Retzler sued the Falls Township Police, and specifically Officer Martial Belinsky, because they failed to properly investigate the theft charges brought against Retzler.  (Compl. ¶¶ 16-17.) Belinsky had a "personal ax to grind with plaintiff Retzler" because of a prior charge Belinsky filed against Retzler for attempting to lure a child with a motor vehicle, a charge for which a jury found Retzler not guilty.  (*Id*. ¶ 17.)  Retzler had set up a meeting with Belinsky for April 26, 2006 to discuss the theft charges, but Belinsky failed to show up and did not reschedule.  (*Id*. ¶ 19.)  As a result, Belinsky did not have "all of the facts of the case."  (Pl.'s Resp. to Belinsky and Falls Township Police Mot. to Dismiss at 2.)

It is not clear if Retzler is suing Falls Township in addition to the Falls Township Police Department.  If Retzler is bringing a claim against Falls Township, at most he included them as the

employer of Belinsky.  But it is well settled that a municipality cannot be liable under § 1983 on a *respondeat superior* theory; a city may not be held liable for its agents' actions.  *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).  Moreover, assuming he is suing both entities, the Falls Township Police Department must be dismissed as a Defendant because a local police department may not be sued along with its municipality because the police department is not a separate legal entity.  *See Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity.").

Assuming he is not also suing Falls Township, Retzler's § 1983 claims against the Falls Township Police and Belinsky still must be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the petitioner claimed that the respondents, acting under color of state law, had engaged in an unreasonable investigation leading to the petitioner's arrest.  The Court concluded that civil tort actions were an inappropriate means of challenging the validity of a criminal conviction.  *Id*. at 485.  Accordingly, under *Heck*, if "success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence."  *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006).

Plaintiff argues that the police department, specifically Belinsky, failed to conduct a proper investigation into the charges against him.  (Pl.'s Resp. to Belinsky and Falls Township Police Mot. to Dismiss at 2.)  But Retzler pled guilty to the crimes at issue here.  A civil lawsuit contending that the investigation and subsequent conviction violated his rights necessarily implicates the validity of that conviction.  As long as that conviction stands, Retzler cannot maintain a civil rights lawsuit that

brings the conviction into question.  If and when he is able to overturn the conviction, he may be able to state a claim.[2]

Retzler asserts that he can demonstrate that he was "in fact not found guilty."  (*Id*. at 4.) According to Retzler, for a defendant to be found guilty, "there must first be a trial and all evidence must be presented and testimony be given . . . there was no trial held, therefore Plaintiff was not found guilty."  (*Id*.)  Retzler's theory is untenable.  Retzler was not tried by a jury because he pled guilty, meaning he waived his right to a trial and all of the protections guaranteed by that right.  His guilty plea has the same force and effect as a conviction by a jury.  *See Kercheval v. United States*, 274 U.S. 220, 223 (1927) ("A plea of guilty . . . is itself a conviction.  Like a verdict of a jury it is conclusive.").

### D.    Claims Against Marrone

The only claims remaining are those against Marrone.  This Court lacks subject matter jurisdiction over these claims and is not at liberty to assume jurisdiction exists and proceed to the merits.  *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999).  According to Retzler, Marrone is "clearly in the State of New Jersey and the Plaintiff and . . . Monica Furber are in the Commonwealth of Pennsylvania." (Am. Compl. at 11-12.)  He also claims that he will not get a fair shake in the courts of Bucks County because "the judge will cover his district attorney."  (*Id*. at 12.)  Although Marrone does not contest Retzler's claim that he is in New Jersey, the Amended Complaint still fails to identify

---

[2] A failure to investigate may support a due process claim if the plaintiff can show the defendant acted intentionally or recklessly, thereby shocking the conscience – a negligent failure to investigate is insufficient to support a claim.  *See Martin v. Anderson*, Civ. A. No. 07-2965, 2008 WL 4761734, at *9 n.8 (E.D. Pa. Oct. 29, 2008) (citations omitted).

Marrone's citizenship.  Instead, Retzler provides Marrone's work address.  But Marrone is a private citizen and is not necessarily a citizen of the state in which he maintains a law office.  Accordingly, this Court cannot determine if this is a lawsuit between citizens of different states.  *See* 28 U.S.C. § 1332(a)(1) (2009).  Furthermore, Retzler, a Pennsylvania resident, sued a number of Pennsylvania residents in this action and thus, complete diversity does not exist.

Additionally, the Amended Complaint, which presumably asserts claims for breach of contract, conspiracy, and/or negligence (legal malpractice), does not exceed the sum or value of $75,000, exclusive of interest and costs, based on the figures it contains.  Retzler's case must be dismissed if "it appears to a legal certainty that he cannot recover the jurisdictional amount." *Frederico v. Home Depot*, 507 F.3d 188, 195 (3d Cir. 2007).  Retzler recently filed a response to Marrone's motion to dismiss, which states that if it is necessary for him to seek damages in excess of $75,000, "then the amount of $76,000 will suffice."  Of course, Retzler cannot fabricate a damages amount in a response to a motion to dismiss to create federal jurisdiction.  *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 667 (3d Cir. 2002) (declaring plaintiff's subsequent stipulation irrelevant because amount in controversy calculated based on "reasonable reading" of complaint).  Arguably, this Court could exercise supplemental jurisdiction over the claims against Marrone.  *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  However, because the only remaining claims are state law negligence claims, this Court will exercise its discretion and decline to exercise jurisdiction.  *See* 28 U.S.C. § 1367(c).  Plaintiff remains free to file a lawsuit in state court alleging legal malpractice.

To the extent Retzler seeks to invoke federal question jurisdiction by attempting to state a civil rights claim against Marrone, his argument fails.  Section 1983 requires that the actor who deprived the plaintiff of his rights acted "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . ."  As the Amended Complaint makes clear, Retzler hired Marrone as his private attorney.  "It is well established that a defense attorney, whether privately retained, court-appointed, or employed as a public defender, does not act under color of state law for purposes of section 1983 when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  *Albrecht v. Hamilton*, 233 F. App'x 122, 124 (3d Cir. 2007) (citing *Polk County v. Dodson*, 454 U.S. 312, 318 (1981)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999).  Thus, Marrone was not acting under color of state law as § 1983 requires.  Furthermore, Retzler's Amended Complaint fails to state facts with sufficient specificity to raise an inference of a conspiracy between Marrone and Furber such that Marrone could be deemed a state actor.  *See Brown v. City of Phila.*, 199 F. App'x 107, 109 (3d Cir. 2006).

## IV.   CONCLUSION

Retzler is clearly frustrated with the repeated injustices he alleges have been perpetrated against him over the years.  But this Court may only adjudicate cases properly brought before it and must apply the correct legal precepts to ensure fairness to all litigants.  Retzler's Amended Complaint fails to allege any viable legal claims properly before this Court and his case must therefore be dismissed.  An appropriate Order will be docketed with this Memorandum.